

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 3, 2006**                            **United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| EVA EVELYN KATHRYN MARTIN | § | CASE NO. 05-48749-DML-7 |
| CORDRAY, | § | |
| | § | |
| DEBTOR. | § | |
| STEVEN M. RANSOM-JONES, | § | |
| PLAINTIFF | § | |
| | § | |
| VS. | § | ADVERSARY NO. 05-04256-DML |
| | § | |
| EVA EVELYN KATHRYN MARTIN | § | |
| CORDRAY, | § | |
| DEFENDANT. | § | |

## <u>MEMORANDUM OPINION</u>

Before the court is the complaint of Plaintiff Steven M. Ransom-Jones ("Ransom-Jones")

against Debtor Eva Evelyn Kathryn Martin Cordray ("Cordray") (1) opposing her discharge, (2)

alternatively, seeking a determination that Cordray's alleged debt to him is nondischargeable,

and (3) asking that Cordray's bankruptcy case be dismissed.  Ransom-Jones and Cordray, each

acting *pro se*, presented testimony and argued before the court on June 21, 2006.  Each also

submitted exhibits to the court, which are identified as necessary below.   This court has

jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(1), (2)(A), (B), (I), (J),

and (O).  This memorandum opinion comprises the court's findings of fact and conclusions of

law.  FED. R. BANKR. P. 7052.


## I. Background

Ransom-Jones and Cordray were divorced on December 31, 2004.[1]  Subsequently,

Cordray married Mr. Cordray, but that marriage also ended in divorce on February 6, 2006, with

Cordray retaining her former husband's name.   Ransom-Jones and Cordray have filed lawsuits

against each other as a result of bitterness from their divorce.  While Ransom-Jones asserts that

Cordray has filed lawsuits to harass him,[2] Ransom-Jones has commenced actions himself, either

directly or indirectly adverse to the interests of Cordray,[3] including this adversary proceeding to

prevent Cordray from receiving a discharge in bankruptcy.  Though acting *pro se*, both Ransom-

Jones and Cordray are sophisticated litigants.  Ransom-Jones works for IBM, earns in excess of

$110,000 yearly, and has experience in litigation from the multiple lawsuits that he has filed with

attorney representation against Cordray and various other parties.  Cordray has both a law degree

---

[1]     Cordray lists the date of her divorce proceeding as December 21, 2004, in her Statement of
        Financial Affairs, under question 4, "Suits and administrative proceedings, executions, garnishments, and
        attachments."  Although the Final Decree of Divorce states that the divorce was judicially pronounced and
        rendered and noted on the docket sheet on October 19, 2004, the judge did not actually sign the Final
        Decree of Divorce until December 21, 2004.  *See* Debtor Exhibit 8, Page 12.

[2]     Cordray filed a Petition for Enforcement of Property Division by Contempt against Ransom-Jones in her
        divorce court, which was addressed by the court summarily.  *See* Plaintiff Exhibit M, Order Granting
        Respondent Steven Morley Ransom-Jones' Motion for Summary Judgment.  Cordray also filed an Original
        Petition to Enjoin Harassing Behavior against Ransom-Jones.  *See* Debtor Exhibit 14.

[3]     Ransom-Jones filed an action against Cordray's boss Sharon Wayland, which was dismissed.  *See* Debtor
        Exhibit 9, Order of Dismissal.  Ransom-Jones also filed a complaint with the Unauthorized Practice of Law
        Committee, which was also dismissed after investigation into the allegations of the complaint.  *See* Debtor
        Exhibit 14, Exhibit C, Letter from the Unauthorized Practice of Law Committee.  Ransom-Jones also filed
        a claim as a third party plaintiff against Cordray's company Martin Law, Inc.  *See* Plaintiff Exhibit J,
        Partial Summary Judgment against Martin Law, Inc.

from Texas Wesleyan University (though she has not been admitted to the bar) and an advanced degree in library science.

Cordray filed for relief under chapter 7 of the United States Bankruptcy Code (the "Code")[4] on August 26, 2005.  Ransom-Jones filed the complaint commencing this adversary proceeding on November 30, 2005.

## II. Issues

The issues before the court are as follows:[5]

1.   Has the debtor transferred or concealed property of the debtor with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property within one year before the date of the filing of the petition under § 727(a)(2)(A)?

2.   Has the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account under § 727(a)(4)(A)?

3.   Are amounts owed to Ransom-Jones by Cordray, if any, nondischargeable under § 523(a)(6)?

4.   Did Cordray commence her chapter 7 case in bad faith such that it should be dismissed?

---

[4]   11 U.S.C. §§ 101, *et seq*.  All citations to section numbers refer to provisions of the Code unless otherwise indicated.

[5]   Ransom-Jones did not specify under which provisions of section 727 he brought his objection to Cordray's discharge.  However, based on the assertions in the complaint, the court believes sections 727(a)(2)(A) and 727(a)(4)(A) potentially applicable in the matter now before the court.

### III. Discussion

Unless the debtor falls within one of several listed exceptions, the court *shall* grant the debtor a discharge.  *See* § 727(a).  Except as provided in § 523, a discharge under § 727(a) discharges the debtor from all debts that arose before the date of the order for relief and any liability on a claim that is determined under section 502 as if such claim had arisen before the commencement of the case.  *See* § 727(b).  A discharge under § 727 operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor.  *See* § 524(a)(2).  At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection.  FED. R. BANKR. P. 4005.  A plaintiff must prove an objection to discharge by a preponderance of the evidence.  *See Grogan* v. *Garner*, 498 U.S. 279, 287-88 (1991); *Swift* v. *Bank of San Antonio (In re Swift)*, 3 F.3d 929, 930 (5th Cir. 1993).

A.     Cordray's discharge should not be denied pursuant to § 727(a)(2)(A).

To establish that a debtor's discharge should be denied under § 727(a)(2)(A), a plaintiff must show four elements: (1) there was either a transfer or a concealment of property; (2) the property belonged to the debtor; (3) the transfer or concealment occurred within one year of the filing of the petition; and (4) there was intent to hinder, delay, or defraud a creditor or officer of the estate.  *See Cadle Company* v. *Pratt (In re Pratt)*, 411 F.3d 561, 565 (5th Cir. 2005).  The mere fact that a transaction occurred soon before the filing of bankruptcy does not alone support an inference of fraud. *Gullickson* v. *Brown (In re Brown)*, 108 F.3d 1290, 1293 (10th Cir. 1997).  In determining whether a given transfer or concealment is fraudulent, the court should consider the circumstances surrounding it.  *Id*. The intent to defraud must be actual, not constructive.  *Pratt*, 411 F.3d at 565.  Nevertheless,

actual intent may be inferred from the actions of the debtor and may be proven by circumstantial evidence. *See id*.

In evaluating the circumstantial evidence to determine whether the debtor had an intent to defraud, courts should consider the following factors: (1) whether there is a lack or inadequacy of consideration for a transfer; (2) whether in the case of a transfer there is a close relationship (e.g., family member, friend, or close associate) between the transferor and transferee; (3) whether the debtor has retained the possession, benefit, or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transfer; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry. *See id*.

Even if Ransom-Jones proved all other elements of § 727(a)(2)(A) by a preponderance of the evidence—and he did not—he has not proven an intent on the part of Cordray to hinder, delay, or defraud her creditors. After Ransom-Jones filed his complaint commencing this adversary proceeding, Diane Reed, Cordray's chapter 7 trustee (the "Trustee"), conducted an investigation into each of the allegations of fraudulent transfer and concealment contained therein. After completing the investigation, the Trustee filed a report disclosing her findings.[6] According to the report, Cordray did not transfer any property with the intent to defraud her creditors, and she disclosed to the best of her ability all of her property.

The court finds the Trustee's report credible. Ransom-Jones has failed to produce evidence in support of his allegations sufficient to rebut the Trustee's report and so has failed

---

[6] The Trustee filed her report with the court on May 1, 2006, and orally briefed the court on her findings at a status conference held on notice to Cordray and Ransom-Jones on May 22, 2006.

to prove any fraudulent transfer or concealment of property by a preponderance of the evidence.

With respect to the transfers in particular, Cordray disclosed each of them on her Statement of Financial Affairs. There were only two properties transferred: one belonging to her and the other belonging to Mr. Cordray. Cordray testified that she reversed her property transfers because she found out that it was not necessary for a married person to put his or her spouse's name on separately owned real estate. While this explanation is not entirely satisfactory, the chronology of events as reflected by the Tarrant County property records is consistent with it. More importantly, Cordray's financial condition has not changed as a result of the transfers.[7] The mere fact that these transactions occurred soon before Cordray filed her bankruptcy petition is not sufficient in and of itself show fraudulent intent. *See In re Brown*, 108 F.3d at 1293. Because Ransom-Jones has failed to show an intent on the part of Cordray to hinder, delay, or defraud her creditors, relief under § 727(a)(2)(A) must be denied.

B. Cordray's discharge should not be denied pursuant to § 727(a)(4)(A).

A debtor's discharge may be denied if the debtor makes a false oath in connection with the debtor's bankruptcy filings. *See Pratt*, 411 F.3d at 565 (citing § 727(a)(4)(A)). To establish a false oath under this section, the plaintiff must show that "(1) [the debtor] made a statement under oath; (2) the statement was false; (3) [the debtor] knew the statement was false; (4) [the debtor] made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Id*.

---

[7]     Ransom-Jones argued that the transfers and associated conduct of Cordray cost her estate tenants from whom a good profit was earned. This contention is not supported by the Trustee's report, and Cordray's uncontradicted testimony casts doubt on the desirability (and reliability) of the tenants in question. Thus, even if destruction of a landlord-tenant relationship could support denial of the landlord-debtor's discharge, the facts in the case at bar would not support such a holding.

A debtor filing for relief under chapter 7 of the Code is required to submit to the court schedules reflecting all of the debtor's assets and liabilities, current income and expenditures, and executory contracts and unexpired leases as well as a Statement of Financial Affairs. FED. R. BANKR. P. 1007(b)(1); §521(1). These documents must be verified (FED. R. BANKR. P. 1008), and the debtor must certify that the information contained in the schedules is "true and correct" (*see* Official Form 6). Therefore, to the extent that a debtor knowingly and with fraudulent intent makes a false statement on the schedules or Statement of Financial Affairs, this constitutes a false oath for purposes of § 727(a)(4)(A). *See* 6 COLLIER ON BANKRUPTCY ¶ 727.04[1][c][2] (15th ed. rev'd 2006).

Ransom-Jones asserts that several statements in Cordray's schedules and Statement of Affairs constitute false oaths for purposes of § 727(a)(4)(A). Specifically, Ransom-Jones asserts that the following information included either in Cordray's schedules or Statement of Financial Affairs is incorrect: (1) the amount shown on Cordray's Schedule I for her former spouse's income, (2) the value shown on Cordray's Schedule B for her 2000 Toyota Corolla automobile, (3) the value shown on Cordray's Schedule B for her jewelry, and (4) that within one year of filing Cordray made gifts of $3000 to her mother and of $10,000 to Mr. Cordray.

The statement concerning the income of her former spouse does not constitute a false oath. At the time Cordray prepared her original schedules, the $1,925.95 figure listed on Cordray's Schedule I accurately reflected Mr. Cordray's monthly income. However, subsequent to Cordray's bankruptcy filing Mr. Cordray's monthly income dropped to zero as a result of health problems. Cordray amended her Schedule I to reflect this change in Mr. Cordray's income. This amendment to Cordray's schedules is not a false oath but rather a change needed to reflect a post-petition change in Cordray's circumstances. *Cf. United States Trustee v. Cortez*

*(In re Cortez)*, No. 05-10459, 2006 U.S. App. LEXIS 18305, at *22-23 (5th Cir. July 20, 2006) (debtors have a duty to amend their schedules to reflect a post-petition change in financial circumstances).

Ransom-Jones has not shown that the values listed in Cordray's schedules for her automobile and jewelry are inaccurate.  The only evidence that Ransom-Jones presented to show the falsity of these statements is an inventory Cordray filed in conjunction with Ransom-Jones' and her divorce proceeding approximately one year before the filing of her schedules.  Ransom-Jones asserts that Cordray lied because the values reflected in the inventory are not identical to those listed in Cordray's schedules.[8]  However, given the amount of time that elapsed between the preparation of the inventory and the filing of Cordray's schedules, such factors as depreciation, normal wear and tear, and subsequent damage to the property in question could account for the difference in values.  Additionally, it is possible that the appraisal of the property upon which Cordray relied in preparing the inventory was inaccurate.  Ransom-Jones has not provided the court with an appraisal of what the car and jewelry are currently worth, and in the absence of such evidence, the court holds that Ransom-Jones has not proven the falsity of the statements concerning the values of the car and jewelry in the schedules by a preponderance of the evidence.  Further, as the Trustee pointed out in her report, Cordray only claimed $1,909.17 of the $10,225 "wildcard" exemption allowable to her under § 522(d)(5), meaning Cordray could have claimed up to $8,315.83 worth of additional property, including added value from jewelry or the automobile, as exempt.  Leaving such a sizable portion of the § 522(d)(5) exemption unused is not consistent with an intent to defraud creditors by incorrectly valuing assets.

---

[8]     If the inventory is false, that would not satisfy the test of §727(a)(4) because, *inter alia*, the inventory did not relate to Cordray's bankruptcy case.

With respect to the $13,000 in gifts that Cordray initially reflected in her Statement of Financial Affairs as being comprised of a $3,000 gift to her mother and a $10,000 gift to Mr. Cordray, Cordray amended her Statement of Financial Affairs to reflect that the entire $13,000 of gifts was to Mr. Cordray only.  While the fact that Cordray made such an amendment does show that the gifts were inaccurately listed in Cordray's original Statement of Affairs, it does not demonstrate fraudulent intent on the part of Cordray.  The total of $13,000 was already included in Cordray's original schedules; it was merely to whom the gifts were made that was inaccurate. Because Ransom-Jones has not shown by a preponderance of the evidence that Cordray's initial description of the gifts in her Statement of Financial Affairs was made with fraudulent intent, the court holds that Cordray's original description of the gifts (which she corrected) was an innocent mistake and does not constitute a false oath.

The Fifth Circuit has held that "an intent to deceive may be inferred from 'reckless disregard for the truth.'"  *General Electric Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005) (quoting *In re Norris*, 70 F.3d 27, 30 n.12 (5th Cir. 1995)).  Where a debtor makes six or more errors and omissions on the schedules and Statement of Financial Affairs, the Court of Appeals for the Fifth Circuit has held that this amounts to reckless disregard for the truth.  *See Cadle Co.* v. *Mitchell (In re Mitchell)*, 102 Fed. App. 860, 862-63 (5th Cir. 2004).[9] Thus, where a debtor makes six or more mistakes on the schedules or Statement of Financial Affairs, the denial of the debtor's discharge under § 727(a)(4) is appropriate regardless of whether the mistakes were made with fraudulent intent.  However, even under this rule, Cordray's discharge should not be denied.  Even assuming *arguendo* that each of the alleged false oaths discussed above constitutes a mistake, Cordray only made four mistakes on her

---

[9]        *Mitchell* is not precedential by its terms, but the District Court has directed its application by this court. *See* Brown v. Chesnut (*In re* Chesnut), 311 B.R. 446 (N.D. Tex. 2004), *rev'd on other grounds* 422 F.3d 298 (5th Cir. 2005).

schedules and Statement of Financial Affairs.  Moreover, as related by the Trustee, neither the investigation of Cordray's affairs nor the administration of her bankruptcy estate has been inhibited by any errors in Cordray's schedules and Statement of Financial Affairs.

Having found that none of the mistakes Cordray made in preparing her schedules and Statement of Financial Affairs, if mistakes at all, were knowing and fraudulent and that the number of mistakes that Cordray made in preparing her schedules and Statement of Financial Affairs is insufficient to constitute a reckless disregard for the truth, the court holds that Cordray's discharge should not be denied under § 727(a)(4)(A).

C.   § 523(a)(6) relief is denied.

A discharge under § 727(a) does not discharge an individual debtor from any claim for willful and malicious injury by the debtor to another entity or to the property of another entity. *See* § 523(a)(6); *Raspanti* v. *Keaty (In re Keaty)*, 397 F.3d 264, 269 (5th Cir. 2005).  The word "willful" in § 523(a)(6) modifies the word "injury," indicating that nondischargeability requires a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. *Kawaauhau* v. *Geiger*, 523 U.S. 57, 61 (1998).  Thus an injury is willful and malicious where it is caused by an intentional act and there is either an objective substantial certainty that the act will cause harm or a subjective motive on the part of the actor to cause harm.  *See Keaty*, 397 F.3d at 270.

As the basis for his § 523(a)(6) claim, Ransom-Jones alleges that Cordray has sought to maliciously harm him by making harassing telephone calls to him and filing frivolous lawsuits against him.  Ransom-Jones also asserts that all the damages awarded to him as a result of certain state court litigation fall within the ambit of § 523(a)(6) and thus should be excepted from discharge.

Ransom-Jones' § 523(a)(6) claim must be denied.  As a general rule, a creditor must file

a proof of claim during bankruptcy proceedings to preserve his claim against the debtor.

*Chapman* v. *Bituminous Ins. Co. (In re Coho Res., Inc.)*, 345 F.3d 338, 342 (5th Cir. 2003).

Ransom-Jones has not filed a proof of claim in this case, and, therefore, he has no debt to be

declared nondischargeable.[10]  That Congress intended that a creditor file a proof of claim before

he or she may bring an action under § 523(a)(6) is evident from the language of the Code.

Section 523(a)(1)(A), dealing with the nondischargeability of certain taxes and customs duties,

specifically provides that the debts falling within its scope are nondischargeable "*whether or not*

*a claim... was filed or allowed*."  § 523(a)(1)(A) (emphasis added).  Were there no presumption

that ordinarily a creditor must file a proof of claim before bringing a nondischargeability action

under § 523(a), this language would be unnecessary and superfluous.  Section 523(a)(6) contains

no such language, implying that Congress intended that a creditor must file a proof of claim

before bringing a nondischargeability action under that provision.  Moreover, section

523(a)(3)(B) provides that debts of the kind specified in § 523(a)(6) are nondischargeable to the

extent the creditor holding such debt did not receive notice of the debtor's bankruptcy case in

time to permit the "*timely filing of a proof of claim* and timely request for a determination of

dischargeability."  § 523(a)(3)(B) (emphasis added).  This provision demonstrates an intent on

the part of Congress that where a creditor has sufficient notice of a debtor's bankruptcy case

(which Ransom-Jones had in this case), the creditor must timely file a proof of claim in order to

bring a nondischargeability action under section 523(a)(6).  Since Ransom-Jones has not filed a

proof of claim, the court determines that relief under § 523(a)(6) should be denied.

The court also notes that Ransom-Jones has engaged in conduct similar to that of which

he complains.  It is clear from the aggregate of the evidence that Ransom-Jones and Cordray

---

[10]     "Debt" is defined as "liability on a claim."  §101(12).

have each engaged in conduct that was motivated at least in part by malice toward the other. The court's jurisdiction to dispose of issues pertaining to a debtor's discharge is part and parcel of the court's *in rem* jurisdiction over the estate created pursuant to § 541(a). *See Cent. Va. Community College, et al. v. Katz*, No. 04-885, 2006 U.S. LEXIS 917, at *23 (January 23, 2006) ("Bankruptcy jurisdiction, as understood today and at the time of the framing [of the Constitution], is principally *in rem* jurisdiction."); *Hood v. Tennessee Student Assistance Corporation (In re Hood)*, 541 U.S. 440, 447 (2004) ("The discharge of a debt by a bankruptcy court is…an *in rem* proceeding."). Thus, the court exercises its equitable jurisdiction in considering Ransom-Jones' complaint. Given Ransom-Jones' conduct vis-à-vis Cordray, he does not come before the court with clean hands and so is not entitled to a favorable result from the court's exercise of that jurisdiction. *See Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.,* 324 U.S. 806, 814 (1945) ("[H]e who comes into equity must come with clean hands.") (internal quotations omitted); *New York Football Giants, Inc. v. Los Angeles Chargers Football Club, Inc.,* 291 F.2d 471, 473-74 (5th Cir. 1961) ("[The clean hands doctrine] is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of defendant.") (internal quotations omitted).

    D.  Bad Faith Dismissal

       Ransom-Jones has failed to show by a preponderance of the evidence that Cordray's case should be dismissed as filed in bad faith.[11]  Although there is little question but that this court has become yet one more battleground in the feud between Cordray and her ex-husband, this does not by itself mean that Cordray's filing was in bad faith.  Ransom-Jones argues that Cordray

---

[11]    Ransom-Jones' request for dismissal would ordinarily be made by motion. *See* FED. R. BANKR. P. 1017(f)(1), 9013, 9014.  Thus, although this relief is sought in an adversary proceeding, the court will take notice of the record in Cordray's chapter 7 case in considering the dismissal issue.

filed her case simply to use the automatic stay of § 362(a) as a weapon in her disputes with him. The evidence, however, does not support this argument.  First, although the stay initially protected Cordray from suit by Ransom-Jones, the court has granted the latter relief from the stay in the past to protect against use of the stay as a weapon and would do so again.  Second, as discussed above, Ransom-Jones has pursued Cordray in the courts as much as she has him; invocation of the stay to protect against litigation initiated by Ransom-Jones is not improper. Third, Cordray appears to have commenced her chapter 7 case for the proper purpose of obtaining a discharge and the corresponding fresh start Congress intended.  *See Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Cooperative, Inc.)*, 150 F.3d 503, 519 (5th Cir. 1998) ("[W]e have noted that 'the requirement of good faith must be viewed in light of the totality of the circumstances… keeping in mind the purpose of the Bankruptcy Code is to give debtors a reasonable opportunity to make a fresh start.'") (quoting *Financial Sec. Assurance Inc. v. T-H New Orleans Ltd. Partnership (In re T-H New Orleans Ltd. Partnership),* 116 F.3d 790, 802 (5th Cir. 1997)).  Cordray lists debts totaling $284,596.60 in her schedules.  While many of these debts relate to her disputes with Ransom-Jones, there is no evidence that they are not valid and enforceable obligations.  The evidence supports a finding that Cordray cannot easily satisfy these obligations and, hence, a finding that she is in need of the fresh start a discharge can give her.  Accordingly, to the extent Ransom-Jones in this adversary seeks dismissal of Cordray's case on the basis that it was filed in bad faith, the relief must be denied.

### IV. Conclusion

For the foregoing reasons, the relief sought by Ransom-Jones must be denied.  Cordray will receive her discharge under § 727(a), and no debt owed by Cordray to Ransom-Jones will be

excepted from discharge under § 523(a)(6).  Each party will bear his or her own costs.  Judgment will enter accordingly.

### End of Memorandum Opinion ###